HARTZ, Circuit Judge,
dissenting, joined by TYMKOVICH, Chief Judge, and PHILLIPS, Circuit Judge:
I join Chief Judge Tymkovich’s dissent and add a few words about the prejudice prong of plain-error review.
One requirement for obtaining relief under plain-error review is that the appellant demonstrate that there was “a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.” United States v. Algarate-Valencia, 550 F.3d 1238, 1242 (10th Cir. 2008) (internal quotation marks omitted). The majority opinion states that “a defendant who shows he has been denied the right to allocute has met his burden of demonstrating prejudice absent some extraordinary circumstance....” Maj. Op. at 1139. But the probability of prejudice is an empirical question. What is the evidence or commonsense reasoning to support the majority’s rule (which I cannot distinguish from a presumption of prejudice)?
The majority opinion notes that 80% of federal district judges who responded to a survey said that allocution is at least somewhat important in sentencing. See id. at 1139-40 (citing Mark W. Bennett, Last Words: A Survey and Analysis of Federal Judges’ Views on Allocution in Sentencing, 65 Ala. L. Rev. 735, 757-58 (2014) (Bennett)).[1] But that is not the issue. The issue is the likelihood that allocution would help a defendant and, in particular, help a defendant in the position of Bustamante-Conchas. The cited article is not strong support for that proposition. It concluded that “allocution rarely results in a different sentence.” Id. at 758 n.147. In particular, when asked how frequently the defendant’s allocution results in a lower sentence below the guideline range (the situation in this case), 77.9% said rarely, 15.1% said neither rarely nor frequently, and 7% said frequently. Id. at 759. The study ap *1149 parently did not ask how often allocution results in a higher sentence below the guideline range, but there is no reason to believe it cannot happen. Allocution is not a risk-free enterprise. It may be harmful if, for example, the defendant displays a lack of remorse. It may even be disastrous. I once saw a defendant say that he was going to get the investigating officers and the prosecutor. The sentencing judge’s initial reaction was to impose a sentence of twice the statutory maximum.
But even if the survey evidence showed that allocution had assisted defendants frequently enough to constitute a “reasonable probability,” that would still not resolve this case. The question addressed by the article — how often has allocution assisted defendants? — is not the relevant question here. The set of defendants we should consider is not those defendants who have exefcised the opportunity to make a statement at sentencing. Rather, the relevant set of defendants is those whose attorneys did not request that the defendant be given an opportunity to make a statement after the sentencing judge neglected to address the defendant on the matter. In other words, the question we should be asking is what is the expected utility of allocution when the right to allocute has been forfeited. The answer to the question addressed by the article and the answer to the relevant question may be quite different because the failure of defense counsel to object when the sentencing judge does not call on the defendant to make a statement has significant probative value. It seems to me that if we are to indulge any presumption in this case, it should be that a defense counsel’s failure to insist on allo-cution indicates that allocution would not have been reasonably likely to materially assist the defendant.
This conclusion follows from the nature and practice of allocution. There is no need for counsel to make a snap decision about whether the defendant should address the court. As acknowledged by defense counsel at oral argument, all competent defense attorneys know the importance of allocution and prepare for it. Counsel will discuss allocution with the defendant and, if it appears that the defendant may benefit from it, prepare the defendant to make a statement. In this light, what are the possible reasons why an attorney would not insist on allocution if the trial judge neglected to call on the defendant personally? First, the defendant may have decided, regardless of what counsel advised, not to speak. Second, after hearing what the defendant could say and how the defendant would say it, defense counsel may think that the potential benefit of allocution is negligible or does not justify taking the risk of causing harm. Third, defense counsel may have prepared the defendant for allocution but forgot to insist on allocution at sentencing.
Certainly, in the first two circumstances we should not reverse for resentencing. What about the third? I suspect that such an oversight can occur. At oral argument, defense counsel suggested that trial counsel in this case forgot because of the length of the sentencing proceeding. Possibly, but if counsel believed that the defendant could be significantly assisted by making a statement to the court, one would think that1 the attorney would take precautions not to forget to do something so valuable. The likelihood of a memory lapse diminishes further when, as here, the sentencing judge provided two reminders, asking if there were any other comments on the proposed sentence and if there was any reason why the sentence should not be imposed. Perhaps more importantly, if defense, counsel had expected the defendant’s statement to be significantly helpful and the court then imposes a harsher sentence *1150 than anticipated, one would think that the sentence would jar counsel into remembering that the ■ defendant had not made his planned statement. The most likely reason why counsel said nothing upon imposition of sentence is that the sentence was a favorable one, as good as counsel could expect, so either (1) counsel consciously made the decision that nothing materially better could come from a statement by defendant or (2) counsel was sufficiently satisfied with the sentence that counsel did not stop to think about what may have gone awry (such as the failure of the defendant to make a statement). Either way, we should not “presume” that allocution would have materially assisted the defendant when the defendant’s own (fully informed) counsel thought otherwise. I should also note that defense counsel did not need to immediately point out the denial of the right of allocution. For 14 days after the sentencing hearing, the district court could set aside the sentence for the clear error of violating the defendant’s right of allocution. See Fed. R. Crim. P. 35(a) (correcting clear error in sentence); United States v. Delgado, 256 F.3d 264, 279 (5th Cir. 2001) (applying Rule 35 to denial of right of allocution). There is no apparent reason why defense counsel here could not have recognized the error within that two-week span and alerted the court.[2]
For these reasons, I cannot agree that in the general case we should assume that when defense counsel does not object to the failure of a trial judge to ask the defendant if he or she wishes to make a statement before sentencing, there is a reasonable probability that allocution would have resulted in a lower sentence.[3]

. Table C in the article shows that 5.3% of responding judges stated that allocution is extremely important, 22% stated that it is very important, and 53% stated that it is somewhat important. Bennett at 758.

. I recognize that the amicus brief contains a substantial list of cases in which the district court reduced the defendant's sentence after the appellate court reversed and remanded for violation of the right to allocution. But too little information about the cases is provided to know whether they show that allocution would have made a difference at the original sentencing. I examined the one case on the list that arose in this circuit. I seriously doubt that the reduced sentence in that case was the result of allocution on remand. The defendant had actually addressed the court after sentence was imposed (we reversed because that was too late). Nothing in that brief statement struck me as likely to change the court’s mind. More importantly, the government’s position changed after remand. It agreed with the defense to jointly recommend a new sentence, perhaps in exchange for the defendant's new agreement not to appeal or seek collateral relief. The judge imposed the jointly recommended sentence. Given how much time it took to check on what happened in that case, I did not attempt to determine what happened in the other cases cited by the ami-cus brief.

. My analysis suggests that if allocution would have helped a defendant, then the failure to object likely resulted from attorney incompetence. In that event, the defendant may have a claim under 28 U.S.C. § 2255, even though denial of allocution in itself is not ground for habeas relief. That claim, however, would be founded on evidence presented to the court regarding what the defendant's statement would have been and why it was not presented, rather than relying on a presumption of prejudice.